## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Newport News Division

**AMANDA JOHNSON,**
**Administrator for the Estate of**
**GEORGE EDWARD FIELDS,**
**Plaintiff,**

**v.**                                                    **Civil Action No. 4:05cv40**

**UNITED STATES OF AMERICA,**
**Defendant.**

### OPINION AND ORDER

Currently before the court is the United States' Motion to Dismiss pursuant to Federal

Rule of Civil Procedure 12(b)(1).  After examination of the briefs and record, the court

determines that oral argument is unnecessary because the facts and legal arguments are

adequately presented, and the decisional process would not be significantly aided by oral

argument.  For the reasons set out herein, the United States' motion is **GRANTED**.

### I.  Factual and Procedural Background

On April 21, 2005, plaintiff, Amanda Johnson, filed a Complaint against the United

States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80,

in her capacity as the administrator of the estate of her deceased father, George Edward Fields

("Fields").  Plaintiff seeks monetary damages as compensation for Fields' suffering, which

allegedly resulted from the failure of the United States Marshals Service ("USMS") to provide

adequate medical care to Fields while he was in custody.  Defendant, the United States, filed its

Answer on November 29, 2005, and its motion to dismiss on January 31, 2006.  Although a

significant period of time elapsed between the Complaint and Answer, defendant's filings were

timely as defendant was not properly served until October of 2005.

The Complaint states that Fields was diagnosed with prostate cancer in August of 1999, approximately two months before he was arrested and incarcerated in connection with a federal drug conspiracy (Compl. ¶¶ 5-6). Plaintiff alleges that the United States "wrongfully and negligently failed or refused to provide medical care" for Fields and that he died in April of 2000 as a "direct and proximate result" of the United States' breach of its duty of care (Compl. ¶¶ 12-18). Although the Complaint correctly asserts that the United States has a "duty to provide for the care of all persons in its custody," it acknowledges that on or about October 8, 1999, shortly after Fields was arrested and ordered to be held without bail, plaintiff's decedent was "transported to the Virginia Peninsula Regional Jail [("VPRJ")] where he was held under a contract" with the USMS (Compl. ¶¶ 6-7, 16). Fields was in the custody of the VPRJ both prior to and subsequent to his federal jury trial which ended on February 10, 2000, with a guilty verdict on four counts. While awaiting sentencing, the decedent's medical condition worsened and this court ordered him transferred to the Federal Bureau of Prisons Medical Center in Springfield, Missouri, on April 17, 2000. Fields was transferred to such facility and subsequently died on April 27, 2000, from prostate cancer with widespread metastasis (Compl. ¶ 15).

As mentioned above, plaintiff's Complaint acknowledges that Fields was held by the VPRJ "under a contract" with the USMS (Compl. ¶ 7). The contract lists the purpose of the agreement as providing for the "housing, safekeeping, and subsistence of federal prisoners" (Mot. to Dismiss, Ex.2). Under the terms of the contract, the VPRJ was required to "provide federal prisoners with the same level of medical care and services provided to local prisons, including transportation and security for prisoners requiring removal from the facility for

2

emergency medical services" (Id. at Art. III).  Likewise, the VPRJ agreed to "accept and provide

for the secure custody, care and safekeeping of federal prisoners" (Id. at Art. I).  Although the

contract permitted the USMS to perform "periodic inspections of the facility," it is clear that

day-to-day operation was the responsibility of the VPRJ as the contract required the VPRJ to

provide trained jail staff "24 hours a day to supervise prisoners" as well as provide "24-hour

emergency medical care for prisoners" (Id. at Art. XIII).  Furthermore, although the United States

retained the responsibility of paying for federal prisoners' medical care, the VPRJ was required

by contract to seek such care as well as to "notify the United States Marshal (USM) as soon as

possible of all emergency medical cases requiring removal of a prisoner from the facility . . ." (Id.

at Art. III).

## II.  Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of

subject matter jurisdiction may attack the complaint on its face or attack underlying jurisdictional

allegations contained in the complaint.  Lane v. David P. Jacobson & Co., 880 F. Supp. 1091,

1094 (E.D. Va. 1995).  When considering whether the court has subject matter jurisdiction, the

party asserting jurisdiction bears the burden.  Williams v. United States, 50 F.3d 299, 304 (4th

Cir. 1995).  Additionally, the court need not accept allegations in the Complaint as true; rather,

the court may consider facts and exhibits outside of the pleadings and may resolve factual

questions without converting the motion into one for summary judgment.  Adams v. Bain, 697

F.2d 1213, 1219 (4th Cir. 1982); Williams, 50 F.3d at 304.  The Fourth Circuit has held that the

proper procedure for analyzing jurisdiction pursuant to the FTCA is analysis under Rule 12(b)(1)

as opposed to summary judgment analysis under Rule 56(c).  Williams, 50 F.3d at 304.

3

### III.  Analysis

As sovereign, the United States is "immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define the court's jurisdiction to entertain the suit." Lehman v. Nakshian, 453 U.S. 156, 160 (1981) (citations omitted); Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.").  The FTCA provides a limited waiver of sovereign immunity for civil claims against the United States for torts committed by federal employees or their agents.  Williams, 50 F.3d at 305; 28 U.S.C. §§ 1346(b), 2674.  Specifically, the Act waives immunity for civil suits for damages:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).[1]  The limited nature of the FTCA's waiver is evident from the Act's numerous exceptions ensuring that the United States maintains immunity in all listed scenarios. See 28 U.S.C. § 2680.  Moreover, as the FTCA waives sovereign immunity, it is "strictly construed, and all ambiguities are resolved in favor of the United States." Williams, 50 F.3d at 305.

The motion to dismiss before the court provides two grounds for dismissal for lack of jurisdiction.  First, defendant contends that the VPRJ is an independent contractor and therefore does not qualify as an "employee" of the United States.  See 28 U.S.C. §§ 1346(b), 2671.

---

[1] Additionally, the Act provides: "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674.

4

Second, defendant contends that the "discretionary function" exception to the FTCA applies to

bar this action.  See 28 U.S.C. § 2680(a).  Because the court concludes both that the VPRJ is not

an employee or agent of the United States and that the discretionary function exception applies,

the court grants defendant's motion to dismiss.

### A.  The VPRJ is an Independent Contractor and not an Employee or Agent of the United States

The FTCA waives immunity and authorizes suits against the United States for injuries

caused by wrongful or negligent acts or omissions of "any employee of the Government while

acting within the scope of his office or employment . . . ."  28 U.S.C. § 1346(b) (emphasis

added).  The definition section of the FTCA defines an "Employee of the government" as

including "officers and employees of any federal agency" and "persons acting on behalf of a

federal agency in an official capacity."  28 U.S.C. § 2671.  Such definition is clearly intended to

include "agents" of the United States; however, it is not broad enough to encompass independent

contractors.  See Williams, 50 F.3d at 304 ("The FTCA does not provide for liability of the

United States for the acts or omissions of independent contractors.").  Furthermore, the definition

of the term "Federal agency" is expressly limited by the FTCA to exclude "any contractor with

the United States."  28 U.S.C. § 2671; see United States v. Orleans, 425 U.S. 807, 814 (1976)

(discussing "the independent contractor exception" to the FTCA's waiver); Wood v. Standard

Products Co., Inc., 671 F.2d 825, 829 (4th Cir. 1982) (recognizing that the FTCA "explicitly

eliminates from government liability thereunder acts of an independent contractor").

As it is clear that independent contractors' actions are not within the FTCA's waiver, the

court must determine whether the VPRJ qualifies as an independent contractor.  The Supreme

Court recognizes the "critical factor" for distinguishing an employee or agent from an

independent contractor as whether the government has the power "to control the detailed physical performance of the contractor."  <u>Logue v. United States</u>, 412 U.S. 521, 528 (1973); <u>see</u> <u>Williams</u>, 50 F.3d at 306 (interpreting Supreme Court precedent as establishing that immunity is not waived unless the government "actually supervises the 'day-to-day operations' of the endeavor") (citations omitted).  In <u>Williams</u>, the Fourth Circuit discusses the "control test" in detail and explains that "the right to inspect does not nullify the general rule that the government is not liable for torts of independent contractors," and that "writing 'sufficient procedural safeguards' into a contract will not covert an independent contractor into an agent or employee of the United States."  <u>Williams</u>, 50 F.3d at 307 (citations omitted).

Turning to the facts, the facts of the instant matter are similar to the facts of <u>Logue</u>, 412 U.S. 521, a wrongful death action resulting from a federal prisoner's suicide that occurred while in the custody of a local jail.  The <u>Logue</u> Court concluded that the United States could not be held liable for the alleged negligence of the local jail's employees as the jail was an independent contractor under the FTCA even though the local employees were "performing tasks that would otherwise be performed by salaried employees of the Government."  <u>Id.</u> at 530-32.  Although the Supreme Court recognized that the United States has a duty to provide for the care of federal prisoners, the opinion highlighted the fact that the same public law which created such duty also granted the Government the power to contract with state authorities to provide for the care and supervision of federal prisoners.  <u>Id.</u> at 529; <u>see</u> 18 U.S.C. § 4002.[2]  Interpreting the text of 18 U.S.C. § 4002, the Court concluded that Congress "rather clearly contemplated that the

---

[2] 18 U.S.C. § 4002 grants the Attorney General the power to contract with state authorities to provide for the custody and care of federal prisoners.  In the instant matter, the USMS contracted with the VPRJ on behalf of the Attorney General.

day-to-day operations of the contractor's facilities were to be in the hands of the contractor, with the Government's role limited to the payment of sufficiently high rates to induce the contractor to do a good job." Logue, 412 U.S. at 529.

Here, the USMS contracted with the VPRJ for the "housing, safekeeping, and subsistence of federal prisoners" (Mot. to Dismiss, Ex.2). The intergovernmental contract required the VPRJ to provide general medical care to the federal prisoners in its custody as well as to provide trained jail staff for around the clock supervision including "24-hour emergency medical care for prisoners" (Id. at Art. XIII). Although the USMS retained the right to perform "periodic inspections" of the VPRJ facility, such inspections do not "nullify the general rule" that the United States is not responsible for the actions of an independent contractor. Thus, it is clear from the contract and from the undisputed facts that the USMS did not assume control over "day-to-day operations" of the VPRJ. Therefore, based on the holding in Logue and the facts discussed above, the court concludes that VPRJ was an "independent contractor" and not an employee or agent of the United States as defined in the FTCA. As a result, plaintiff has failed to carry her burden of establishing waiver of immunity under the FTCA. Numerous cases from within this circuit have reached similar conclusions in similar circumstances. See, e.g., Williams, 50 F.3d at 307 (finding no waiver of immunity for a slip and fall injury occurring in a building leased by the United States because the Government had entered into a "comprehensive contract" with the third-party defendant to provide for all maintenance on the premises); Lumpkins v. United States, 187 F. Supp. 2d 535, 539 (D. Md. 2002) (finding no waiver in a construction injury case occurring on United States property as the contract at issue required the third party construction company to "exercise detailed physical control over the project" and to

assume responsibility for the "health and safety" of on-site workers); Kramer v. United States,

843 F. Supp. 1066, 1072 (E.D. Va. 1994) (finding no waiver in a medical malpractice case

because the health care providers working at an Air Force base clinic were independent

contractors as the "day-to-day" work of the "separate economic entity" was not controlled by the

government).

### B.  The Decision to Contract with the VPRJ is a Discretionary Function under the FTCA

Although the FTCA permits actions for damages against the United States for injuries

caused by the tortious conduct of United States employees or agents, the FTCA also includes a

section that expressly limits the immunity waiver in listed circumstances.  See 28 U.S.C. § 2680

(titled "Exceptions").  The first subsection of the exception provision bars waiver if the

plaintiff's claim is based upon "the exercise or performance or the failure to exercise or perform

a discretionary function or duty, . . . whether or not the discretion involved be abused."  Id. at

§ 2680(a).  The Fourth Circuit has explained such exception as ensuring that "agents and

employees of the United States will not be held liable for their challenged conduct if performance

of their duties necessarily involves making decisions that are grounded in public policy."

Williams, 50 F.3d at 308-09; see United States v. S.A. Empresa de Viacao Aerea Rio Grandense

(Varig Airlines), 467 U.S. 797, 814 (1984) (explaining the purpose of the discretionary function

exception as preventing "judicial 'second-guessing' of legislative and administrative decisions

grounded in social, economic, and political policy").

The Supreme Court and the Fourth Circuit have articulated a two-prong test to determine

whether the discretionary function exception set forth in 28 U.S.C. § 2680(a) applies in a given

situation.  Gaubert, 499 U.S. at 324; Williams, 50 F.3d at 309.  First, the act or omission at issue

must be "discretionary in nature," that is, involve "judgment or choice." Williams, 50 F.3d at

309. Conduct is not discretionary if a federal rule or statute "specifically proscribes a course of

action." Gaubert, 499 U.S. at 322 (quoting Berkovitz v. United States, 486 U.S. 531, 535

(1988)). Second, the act or omission must be "of the kind that the discretionary function

exception was designed to shield." Gaubert, 499 U.S. at 324. When analyzing the second prong,

the inquiry should not focus on the subjective intent of the government actor, but rather "on the

nature of the actions taken and on whether they are susceptible to policy analysis." Id. at 325; see

Williams, 50 F.3d at 309.[3] Additionally, as the burden to establish jurisdiction is on the plaintiff,

"[f]or a complaint to survive a motion to dismiss, it must allege facts which would support a

finding that" either the challenged conduct does not involve judgment or choice, or it is not

"grounded in the policy of the regulatory regime." Gaubert, 499 U.S. at 324-25.

     Turning to the instant matter, first, the USMS's decision to contract with VPRJ clearly

involved judgment or choice and was not "specifically proscribed," as the relevant statutory

provision provides that the USMS, on behalf of the Attorney General, "may contract . . . for the

imprisonment, subsistence, care and proper employment" of federal prisoners. 18 U.S.C. § 4002

(emphasis added). Thus, the first prong of the discretionary function test is met. Second, when

deciding whether to contract with a state facility, the United States "had to weigh concerns of

expense, administration, payment, access to the premises, and a veritable plethora of factors

before arriving at the decision to engage" the VPRJ. Williams, 50 F.3d at 310. Likewise, the

---

[3] The subjective intent of the government actor is not the proper focus because 28 U.S.C. § 2680(a) expressly states that the exception still applies even if the actor failed to act or abused the discretion that he held. Thus, if the court determines that the conduct at issue is discretionary and policy-based, negligent actions or the failure to act are irrelevant. See Varig Airlines, 467 U.S. at 820.

requisite balancing of policy factors is plainly evident from the statute that permits the USMS to

enter into such contracts; the statute states:

> The rates to be paid for the care and custody of [federal prisoners] shall take into
> consideration the character of the quarters furnished, sanitary conditions and
> quality of subsistence and may be such as will permit and encourage the proper
> authorities to provide reasonably decent, sanitary and healthful quarters and
> subsistence for such persons.

18 U.S.C. § 4002.  Furthermore, as the subject of the intergovernmental contract is

"medium/maximum security-type prisoners" who may be "a risk of flight, a danger to the

community, or wanted by other jurisdictions," it is clear that the USMS must carefully balance

competing policy factors prior to entering a contract for the housing and care of federal prisoners

(Mot. to Dismiss, Ex.2 Art. I).  Therefore, the court concludes that the decision to contract with

the VPRJ to house, monitor, and provide medical care to federal prisoners falls within the

discretionary function exception as it involves "administrative decisions grounded in social,

economic, and political policy." Varig Airlines, 467 U.S. at 814; see Williams, 50 F.3d at 310

("The decision to hire an independent contractor to render services for the United States is

precisely the type of decision that the [discretionary function] exception is designed to shield

from liability.").

    Additionally, the court rejects any potential argument that the USMS was negligent in

failing to provide medical care to Fields even though the USMS contracted with the VPRJ to

provide medical care for him.  In Williams, the plaintiff argued that even though the United

States had contracted with a third party to maintain the premises, the Government was still

negligent for not inspecting the premises or posting signs to warn of a wet floor.  Williams, 50

F.3d at 310.  The Fourth Circuit rejected such argument, explaining that after concluding that the

decision to hire the outside company to maintain the premises was "with the ambit of the discretionary function exception," the plaintiff's assertions that the United States should have inspected the premises or posted signs "cannot prevail because these decisions are embraced by the overarching decision to engage" the outside company.  Id.  Likewise, here, after concluding that contracting with the VPRJ to provide housing and medical care is "within the ambit of the discretionary function exception," any contentions that the USMS was still negligent for failing to provide medical care cannot prevail, as the medical care decisions are "embraced by the overarching decision to engage" the VPRJ.  Therefore, as the discretionary function exception applies to the challenged governmental acts, the United States has not waived sovereign immunity under the FTCA.

### IV.  Conclusion

For the reasons discussed above, defendant's motion to dismiss is **GRANTED**, as the United States has not waived sovereign immunity under the FTCA.  Plaintiff's claims against the USMS are barred as the United States is not liable for the alleged tortious acts of the VPRJ, an independent contractor; furthermore, the USMS's actions are protected under the discretionary function exception of the FTCA.

The Clerk is **REQUESTED** to mail copies of this Order to counsel for all parties.

**IT IS SO ORDERED.**

_____/s/_____
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
March  7  , 2006